**2013 BNH 011    Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.**
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                                          Bk. No. 13-10446-JMD
                                                                                                 Chapter 13
John A. James, Jr.,
           Debtor

*Mark Cornell, Esq.*
*Concord, New Hampshire*
*Attorney for Debtor*

*S. William Dahar II, Esq.*
*Victor W. Dahar, P.A.*
*Manchester, New Hampshire*
*Attorney for Creditor Barbara A. James*

## MEMORANDUM OPINION

### I.  INTRODUCTION

Creditor Barbara A. James ("B. James") filed a Motion to Dismiss (Doc. No. 9) (the "Motion") John A. James, Jr.'s (the "Debtor") chapter 13 case. The Debtor objects (Doc. No. 10) (the "Objection").  The Motion alleges that the Debtor's case should be dismissed because there is no change in circumstances from the Debtor's first case that provides a good faith basis for filing the chapter 13 petition, and because the totality of the circumstances show bad faith in filing the petition.

The Court held a preliminary hearing on the matter on April 3, 2013, and an evidentiary hearing on the matter on May 30, 2013 (the "Hearing").  The Court took evidence at the Hearing

1

for the purpose of deciding whether B. James met her burden to show that the Debtor filed his chapter 13 case in bad faith under 11 U.S.C. § 1307(c).

Essentially, B. James alleges two bases to support a finding of bad faith under § 1307(c) of the Bankruptcy Code: (1) there is no change in circumstances that provides a good faith basis for filing the second petition; and (2) the Debtor has caused B. James significant delay in recovery.

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a), and U.S. District Court for the District of New Hampshire Local Rule 77.4(a).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTUAL & PROCEDURAL BACKGROUND

B. James and the Debtor were married and divorced prior to the filing of either of the Debtor's petitions for relief under chapter 13 of title 11 of the U.S. Code (the "Bankruptcy Code").  B. James's claim arises from litigation in and orders of the Commonwealth of Massachusetts Essex Division Probate and Family Court. See Exs. 15-30, 36-45.  Proof of Claim 2-1 filed by B. James (the "Proof of Claim") states that she has a claim entitled to priority as a Domestic Support Obligation (DSO) in the total amount of $66,337.21.  Ex. 32.   Prior to and concurrently with the bankruptcy proceedings, the Debtor and B. James have been litigating over the Debtor's obligations in the Massachusetts state courts.

### A. Debtor's First Chapter 13 Case

On December 19, 2011, the Debtor filed his first chapter 13 petition for relief as a skeletal petition.  Ex. 1 (the "First Case").  On December 20, 2011, the Court issued a Notice to the Debtor to file the balance of his schedules, statement, and plan on or before January 3, 2012,

failing which the case would be dismissed.  On December 30, 2011, the Court issued a Contingent Notice of Dismissal to the Debtor to file his declaration regarding electronic filing as required by Local Bankruptcy Form LBF 5005-4A, failing which the case would be dismissed.

On January 30, 2012, the case was dismissed for failure to file the electronic filing declaration.  The dismissal was vacated on Debtor's motion after compliance with the Local Bankruptcy Form.  The Debtor obtained an extension of time to file the balance of his petition and filed those documents on February 15, 2012. See Ex. 1.

On his Schedule I, Statement of Income, the Debtor listed his monthly income of $697.89:

| Line 1: Income- Wages | $1,733.33 |
| Line 7: Income- Business | $600.00 |
| Line 5: Less Payroll Deductions | - $1,635.44 |
| Line 15: Average Monthly Income | $697.89 |

Ex. 1 at 24 of 46.  The Debtor's nondebtor spouse's income is listed as $58,527.42, with a combined average monthly income of $59,225.31.  Id.  Debtor's Schedule J lists Average Monthly Expenses of $60,121.97, leaving Monthly Net Income of  negative $896.66.  Id. at 27 of 46.

B. James filed a proof of claim in the amount of $52,500.21.  Ex. 31.  The Debtor objected to the claim of B. James, and the Court overruled that objection, finding that B. James's claim was entitled to priority in the amount of $52,500.21.  Ex. 9.  The Debtor appealed the Court's order overruling the objection to B. James's proof of claim to the Bankruptcy Appellate Panel for the First Circuit.  Ex. 14.  The BAP subsequently dismissed the appeal because the

Debtor failed to file an opening brief and appendix in that proceeding.  See Exs. 10-13.  Accordingly, this Court's order allowing the priority claim became final.

      B. James filed a motion to dismiss, arguing that the First Case should be dismissed pursuant to § 1307(c)(11) for failure to pay a $2,500 fee imposed by the Massachusetts Probate and Family Court. Ex. 3.  The Court held an initial hearing on the motion, and continued it subject to the Debtor making a payment to B. James, and certain pleadings from the Probate and Family Court being filed and provided to B. James's counsel.  Ex. 4.  The Chapter 13 Trustee also filed a motion to dismiss, arguing that the First Case should be dismissed because of a failure to make plan payments, because the plan was underfunded, and because: "[I]t does not appear that the Plan is feasible in that it relies upon the speculative large contributions of [the Debtor's] current spouse, while even including same his currently stated disposable income on Schedules I and J is negative $896.66, and his Plan is due to escalate to require payments of $1,550.00 per month." Ex. 2.  On February 15, 2013, at a continued hearing on the motions to dismiss, the Court granted the Trustee's motion to dismiss.  Ex. 5.

      **B.**    **Debtor's Instant Chapter 13 Case**

      Ten days later, on February 25, 2013, the Debtor filed a skeletal chapter 13 petition in the instant case. Ex. 7.  On February 26, 2013, the Court issued a Notice to the Debtor to file the balance of his schedules, statements, and plan on or before March 11, 2013, failing which the case would be dismissed. (Doc. No. 5).  B. James filed the instant Motion on March 1, 2013. (Doc. No. 9).  At an initial hearing on the Motion, on April 3, 2013, the Court inquired of the Debtor why the schedules and plan were not filed.  The Debtor stated that the contingent dismissal date was not until April 10, 2013, and therefore he had been concerned with that date,

4

rather than the date the schedules and plan were due to be filed. The Court, concerned whether the Debtor was prosecuting the case in good faith, continued the hearing on the Motion and ordered that the case would not be automatically dismissed and that any dismissal would await further order of the Court. (Doc. No. 11).

On April 11, 2013, the Debtor filed the balance of his schedules, along with the Plan. Ex. 7. On his Schedule I, Statement of Income, he listed his monthly income as $6,410.89:

| Line 1: Income- Wages | $1,733.33 |
| Line 7: Income- Business | $5,000 |
| Line 5: Less Payroll Deductions | - $322.44 |
| Line 15: Average Monthly Income | $6,410.89 |

Ex. 2. The Debtor's nondebtor spouse's income is listed as $59,252.84, with a combined average monthly income of $65,663.73. Id. Debtor's Schedule J lists Average Monthly Expenses of $65,767.16, leaving Monthly Net Income of negative $103.43. Id.

With respect to claims in the instant case, B. James has filed the Proof of Claim for a priority DSO claim of 66,337.21. Ex. 32. The IRS has filed a proof of claim in the amount of $115,203.38, made up of a $9,425.00 secured claim, a $98,188.04 priority tax claim pursuant to § 507(a)(8), and a $7,590.34 unsecured claim.[1] Ex. 34. The third and final claim was filed by the Massachusetts Department of Revenue, in the amount of $23,559.26, made up of a $5,144.76 priority tax claim pursuant to § 507(a)(8) and a $18,414.50 unsecured claim.[2]

---

[1] The IRS also filed an objection to the confirmation of the Debtor's proposed chapter 13 plan because the Debtor's plan did not meet the feasibility requirement of § 1325(a)(6). Ex. 47.

[2] The Court takes judicial notice of the claims register in this case.

5

The Meeting of Creditors pursuant to 11 U.S.C. § 341 was held and concluded on April 15, 2013.  Shortly after the Meeting of Creditors, the Trustee filed a motion to dismiss, stating that the Debtor: had failed to make timely plan payments; was "unable to formulate a confirmable chapter 13 plan" because the proposed plan did not provide for, inter alia, the claims of B. James, and the Internal Revenue Service (IRS); and "employment with his spouse is vague and does not provide a regular source of income."  Ex. 46.

On May 30, 2013, the Court held an Evidentiary Hearing on the Motion.  At the hearing, the parties stipulated to the admission of B. James's Exhibits 1-48, and Debtor's Exhibit 101.  The Court heard testimony from B. James and from the Debtor.  After testimony, the parties submitted memoranda of law, and the Court took the matter under submission.

### III.  DISCUSSION

#### A. Bad Faith Filing in Chapter 13

Section 1307(c)   provides: "[O]n request of a party in interest . . . and after a notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including (1) unreasonable delay by the debtor that is prejudicial to creditors . . . ."  § 1307(c).  "The list of grounds for dismissal or conversion found in § 1307 is not exhaustive, the court is not limited by the specific circumstances mentioned there."  <u>Gonzales-Ruiz v. Doral Fin. Corp. (In re Gonzales-Ruiz)</u>, 341 B.R. 371, 382 (B.A.P. 1st Cir. 2006).

While "bad faith" is not an enumerated "cause" under § 1307(c)(1)-(11), "it is well established that lack of good faith (i.e., bad faith) is 'cause' for dismissal or conversion of a Chapter 13 case." Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 211 (B.A.P. 1st Cir. 2005). The First Circuit Court of Appeals has commented that "good faith is a concept, not a construct. Importantly, it is a concept that derives from equity." Berliner v. Pappalardo (In re Puffer), 674 F.3d 78, 82 (1st Cir. 2012) (applying the totality of circumstances test and finding that a chapter 13 fee-only plan is not per se bad faith). Under § 1307(c), the objecting creditor has the burden of proving a lack of good faith on the part of the debtor. Sullivan, 326 B.R. at 211. Bankruptcy courts in the First Circuit apply a totality of the circumstances test to determine whether a debtor has filed a chapter 13 in good faith (or bad faith). Id. The bottom line is "whether the Debtor is attempting to thwart his creditors, or is making an honest effort to repay them to the best of his ability." In re Virden, 279 B.R. 401, 407 (Bankr. D. Mass. 2002).

> Courts typically consider the following factors in making such a determination:
>
> (1) debtor's accuracy in stating her debts and expenses, (2) debtor's honesty in the bankruptcy process, including whether she has attempted to mislead the court and whether she has made any misrepresentations, (3) whether the Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt would be dischargeable in a Chapter 7, and (6) debtor's motivation and sincerity in seeking Chapter 13 relief.

Sullivan, 326 B.R. at 212 (citing In re Dicey, 312 B.R. 456, 549 (Bankr. D.N.H. 2004)); In re Visconti, 448 B.R. 617, 622 (Bankr. D.N.H. 2011).

Although this Court and others have provided lists of relevant factors, the inquiry is inherently fact sensitive, done on a case-by-case basis, and may involve consideration of other factors or a more general balancing of equities. See Sullivan, 326 B.R. at 212 (citations omitted). Two additional factors have been considered when examining the totality of the

7

circumstances: (1) a debtor's history of filings and dismissals, and (2) whether a debtor only intended to defeat or circumvent state court litigation.  See Sullivan, 326 B.R. at 211-12 (citing In re Fleury, 294 B.R. 1, 5-6 (Bankr. D. Mass. 2011); see also In re O'Neal, 2011 WL 2117017, at *5 (Bankr. D. Mass. May 23, 2011)).

Where a debtor has a history of prior filings, and there is no significant change in circumstances or legitimate bankruptcy purpose, then courts have found bad faith.  See Gonzalez-Ruiz,341 B.R. 371; Sullivan, 326 B.R. 204; Fleury, 294 B.R. 1. But see O'Neal, 2011 WL 2117017 (finding no improper purpose and denying a motion to dismiss for bad faith filing where despite litigation and a prior filing because unsecured creditors were getting paid a substantial dividend through a sixty month plan and because the bankruptcy court was an appropriate forum to determine whether retirement accounts are exempt even if encumbered by liens).   Where the debtor has a history of failure to complying with his obligations as a debtor, courts have found a lack of good faith.  See In re Colon Martinez, 472 B.R. 137 (B.A.P. 1st Cir. 2012); Sullivan, 326 B.R. 204.

If a debtor's primary intent in filing a chapter 13 petition, or successive petitions, is to avoid payment to a specific creditor, a court may find bad faith.  This intent may be evidenced by a lack of other creditors, a recharacterization of the creditor's claim so as to avoid payment through the plan, or an opacity in the schedules and plan that avoid disclosure of the debtor's financial circumstances.  See Sullivan, 326 B.R. 204; Fleury, 294 B.R. at 7-8; Virden, 279 B.R. at 410.  In Sullivan, the chapter 13 debtor had only two creditors, the IRS and her co-defendant in a state court action. The  Bankruptcy Appellate Panel for the First Circuit (the BAP) affirmed the bankruptcy court's finding of a lack of good faith, and held the purpose of the filing was to

obtain funds that would otherwise have gone to the co-defendant and citing in support the lack of creditors other than the IRS. 326 B.R. at 213; accord In re Dicey, 312 B.R. 456, 460 (Bankr. D.N.H. 2004) (finding that a chapter 13 plan was filed in bad faith where, inter alia, the case is in substance a one creditor case).

In Colon Martinez, an individual debtor filed two chapter 11 cases within a one-year period. In each of those proceedings, the debtor failed to abide by court orders by not filing a plan or disclosure statement, as well as missing filing deadlines after obtaining repeated extensions. 472 B.R. at 144, 146-67. The BAP affirmed the bankruptcy court's dismissal of the second case because the debtor, who filed both cases pro se, did not indicate any change in circumstances between the two filings. The BAP found that his failure to abide by orders of the court and the requirements of the Bankruptcy Code was willful and indicated bad faith. Id. at 147 (affirming the bankruptcy court's determination that the debtor's prior dismissal for failure to file documents supported a dismissal under 11 U.S.C. 109(g)).

In Fleury, the chapter 13 debtor recharacterized the claim of a creditor between her first and second petition. In the first case, the debtor failed to update the schedules when a judgment in which she had an interest was entered. In the second, the debtor contested the creditor's claim to part of the state court judgment. The bankruptcy court dismissed the case as having been filed in bad faith because the debtor was not making an honest effort to repay her primary creditor. The court found "[her] actions appear[ed] purposeful and planned" to avoid paying her creditor, despite an ability to pay her debts. 294 B.R. at 7-8. The court found that the debtor's plans to avoid payment through use of the bankruptcy system was "egregious behavior" that, taken in context of the rest of the case, supported dismissal of the case under § 1307(c). Id.

In <u>Sullivan</u>, the debtor filed her first chapter 13 petition less than a month after entry of a state supreme court judgement against her.  326 B.R. at 206.  The bankruptcy court granted the chapter 13 trustee's motion to dismiss for failure to pay and provide required information.  Approximately five weeks later, the debtor filed a second chapter 13 petition.  The court dismissed that case for failure to file schedules, a Statement of Financial Affairs, or a plan.  The debtors filed a motion to vacate the dismissal, along with the required documents.  The chapter 13 trustee filed a motion to dismiss the second case for failure to make plan payments, failure to produce required insurance information, and failure to disclose a prior claim for attorneys' fees; the court granted that motion and dismissed the second case.  <u>Id.</u> at 207.  Nine months later, debtor filed a third petition.  The court dismissed the third case because the debtor lacked sufficient income to fund a chapter 13 plan.  The day before the third case closed, the debtor filed a fourth chapter 13 petition.  The bankruptcy court granted the judgment creditor's motion to dismiss the fourth case for bad faith, including a history of prior filings and dismissals and the debtor's purpose to unreasonably delay and hinder the state court action.

The BAP affirmed the bankruptcy court's dismissal.  The BAP explicitly adopted the totality of the circumstances test, and commented that a determination of good faith in filing the petition "advance[s] one of the primary purposes of bankruptcy, which is to relieve the honest but unfortunate debtor from the weight of oppressive indebtedness, allowing the debtor to start afresh."  <u>Id.</u> at 211-12 (citing <u>Local Loan Co. v. Hunt</u>, 292 U.S. 234, 244 (1934)).  The BAP held that the debtor's unsuccessful serial filings supported the bankruptcy court's finding that the debtor's purpose was to avoid satisfaction of the state court judgment.  <u>Id.</u> at 212.  The BAP continued: "The debtor's conduct in her previous cases also demonstrated her lack of sincerity.

10

In the Debtor's previous cases, she failed to comply with her obligations as a debtor by failing to make payments, produce documents requested . . . failing to file schedules . . . [and] lack[ing] sufficient income to fund a plan. . . . In the Debtor's fourth petition, her monthly disposable income was only $11 more than in her previous case." Id. at 213. Thus, the BAP affirmed the bankruptcy court's dismissal because the totality of the circumstances indicated bad faith and an improper purpose. Id.; see also Fleury, 294 B.R. 1, 6-7, 8 ("Although Petition II is only the Debtor's second bankruptcy filing, the similarity between the two petitions demonstrate a common intention in both filings.") (finding bad faith where the debtor's second chapter 13 petition was nearly identical and the debtor was found to be "singular in her desire to discharge the creditor's claim").

In Gonzalez-Ruiz, the debtors filed and voluntarily dismissed one chapter 13 petition. Less than three months later, the debtors filed a second chapter 13 petition; the bankruptcy court dismissed the second case for failure to comply with plan provisions. 341 B.R. at 375-76. Three years later, the debtors filed a third chapter 13 petition. In the third case, the debtors made plan payments and attempted to obtain a discharge. The debtors' mortgage lender was not properly noticed nor properly paid through the plan, and after protracted motion practice, the bankruptcy court found the second confirmation order was not binding on the lender. Id. at 378. No appeal of that order was filed, although the debtors filed six motions for reconsideration with the bankruptcy court. Id. at 379. Prior to the third case being closed, the debtors filed the fourth case. The bankruptcy court granted the lender's motion for dismissal for bad faith filing, concluding, "the sole purpose of the present filing is to stay [the lender's] sale of the debtors' residence. The sale was authorized by the [c]ourt in the debtors' previous bankruptcy petition

11

and the debtors failed to appeal. The [c]ourt concludes that the debtors may not obtain relief from the orders entered in the previous case by filing a new petition." Id. at 380. The BAP affirmed, ruling that the fourth case, "was not filed in order to reorganize the debtors' affairs, but to circumvent and undermine the bankruptcy court's orders in the Third Case. . . . Filing a new bankruptcy case is not an alternative remedy to an appeal. It is not an honest approach to the bankruptcy process." Id. at 383. The BAP affirmed dismissal because the fourth case was not filed for a proper bankruptcy purpose. Id.

      **B.**       **The Filing of this Chapter 13 Case**

This is the Debtor's second bankruptcy petition within thirteen months, and there is no material difference between the first and second filing. The First Case was filed on December 19, 2011, and the instant case on February 25, 2013. In the First Case, the Debtor's Disposable Income was negative $896.66. In this case, the Disposable Income is a negative $103.43. While the Debtor's petition in this case includes an estimated $5,000 from the operation of his business, there is no evidence on the record to support his estimate. The Debtor testified at the Hearing that he believed his business was picking up and that the inclusion on Schedule I was made in good faith. However, the second petition was filed a mere ten days after the dismissal of the First Case for, among other reasons, speculative income and an underfunded plan. Nothing in the record supports a change in circumstances for the Debtor. Like in Sullivan, where the debtor's disposable income in the fourth petition was only $11 more than in the third petition, the Court finds that where the Debtor proposes to fund his plan through contributions from a nondebtor third person, there is no meaningful difference between negative $896.66 and negative $103.43.

12

Similar to Fleury, where the bankruptcy court found no bankruptcy purpose when the second case's filings were very similar to those in the first case, here the Court finds no significant difference between the two petitions, other than the inclusion of an additional judgment entered against the Debtor by the Massachusetts State Court on account of the final semester of college tuition for the parties' son. And like in Colon Martinez, where the similarities and failure to show a change in circumstances supported dismissal for bad faith, the Debtor has not demonstrated any change in circumstances other than his testimony that business was increasing. The Debtor's disposable income is still insufficient to support a chapter 13 plan of reorganization, even without considering whether the income from either his employment by his current wife or from his law practice is speculative. The small change in income, especially as it is accompanied with increased expenses in Schedule J, does not support an ability or intent to reorganize the Debtor's affairs.

The Debtor has also failed to comply with his obligations as a debtor, both in the First Case and in this case. In the First Case, the debtor did not file his schedules, statement of financial affairs, or plan by the date required by the Code nor did he file the declaration of electronic filing in compliance with the Local Rules, and the case was dismissed as a result. Although the case was reinstated on the Debtor's motion to vacate dismissal, initial failure to comply with the requirements of the Code has been considered by courts to be indicative of bad faith, such as in Sullivan. The First Case was ultimately dismissed on the Trustee's motion, partially because the plan was based on speculative income by the Debtor's nondebtor spouse, and partially because the Debtor had failed to make payments under the plan. While actions prepetition or in a prior case cannot, standing alone, constitute a finding of bad faith in filing this

13

chapter 13 case, these failures to meet the basic requirements of a chapter 13 debtor support a finding of bad faith.

In this case, the Debtor filed his petition shortly after the dismissal of the First Case, but did not file the schedules until after the deadline to do so had run.  Specifically, the Debtor filed his petition on February 25, 2013, ten days after the First Case was dismissed.  The schedules, statement of financial affairs, and plan were required by court order to be filed on or before March 11, 2013.  At the Court's preliminary hearing on the Motion on April 3, 2013, twenty-three days after the deadline, the documents had not yet been filed.  Debtor indicated at that hearing that he was aware that the deadline under the Court's order had passed, but because he knew that the case would not be dismissed until the deadline for automatic dismissal under § 521(i) had lapsed, he had not filed the balance of the petition.  While the documents were filed on April 11, 2013, the Debtor's casual disregard for his responsibilities and for the Court's orders supports a finding of bad faith.  Particularly because the schedules were so similar, and the second petition was filed very shortly after the dismissal of the First Case, the failure to file required documents is even more egregious.

While B. James argues that she has been subject to unreasonable delay because of the Debtor's failure to pursue his appeal of this Court's order allowing B. James's claim in the First Case, the Court is unconvinced by that argument.  However, neither is it convinced by the Debtor's argument that he was just "availing [himself] of the procedural protections available in the [B]ankruptcy [C]ode."  The Debtor did have the right to file an appeal of this Court's order to the BAP.  Such an appeal is not an unreasonable delay, and cannot be considered to evidence bad faith.  However, the Debtor did not prosecute that appeal when he failed to arrange for a

transcript to be delivered to the BAP, see Ex. 12, and to comply with the BAP's Briefing Order, see Exs. 10, 11, 13.  This conduct is substantially similar to his conduct in this Court.

Further, the Debtor appears to be attempting to use this case as an alternative to pursuing that appeal.  The Debtor's schedules in this case include part of B. James' claim, namely the attorneys' fees in the amount of $42,155.68, as an unsecured nonpriority claim.  This Court had previously ruled, after an evidentiary hearing, that B. James was entitled to a priority DSO claim of $50, 936.08.  The Debtor's schedules in this case include only an $12,725 claim for B. James's DSO claim.  This conduct is similar to that in Gonzales-Ruiz, where the debtors did not file an appeal, but contested the same claim in their fourth bankruptcy petition, even though the bankruptcy court had previously ruled on it. While the Debtor here did file an appeal, his abandonment and its subsequent dismissal for lack of prosecution similarly supports a finding of bad faith.

Characterization of B. James's DSO claim as only $12,725, on account of a prepetition obligation to pay college expenses, while characterizing the rest of her claim as an unsecured nonpriority claim after this Court had allowed the entire claim in the First Case in the amount of $50,936.00, also demonstrates the Debtor's focus on avoiding payment to B. James.  As in Fleury, where the bankruptcy court found that the debtor's subsequent petition appeared to be filed with the singular purpose of avoiding payment to her creditor because she had recharacterized the claim and failed to update it after subsequent judgments in the state court were entered, here the Debtor has changed how the B. James's claim is listed.  Like in Gonzalez-Ruiz, the Court finds that this is not a valid purpose in bankruptcy.

The totality of the Debtor's circumstances, both in the First Case, the BAP appeal, and in this case, support a finding of bad faith in filing the chapter 13 petition. The Court finds little valid bankruptcy purpose, and certainly no benefit to the estate or to creditors that could not be found outside of bankruptcy. If the Debtor is to reorganize his financial affairs, whether in a bankruptcy proceeding or outside of bankruptcy, he must depend on the generosity of a third party. For the reasons discussed in this opinion, the Debtor's conduct has not demonstrated his good faith and intention to reorganize his affairs. Thus, the Court finds that the petition was filed in bad faith, and that B. James's motion to dismiss under § 1307(c) shall be granted.

### IV.  CONCLUSION

The Motion shall be granted by separate order. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.

Date:   September 24, 2013                    /s/ J. Michael Deasy
                                              J. Michael Deasy
                                              Bankruptcy Judge